**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ALVARO LEIVA-TUT,** | |
| **Petitioner,** | |
| **v.** | **CIVIL ACTION NO.  26-4734** |
| **J.L. JAMISON,** *et al.*, | |
| **Respondents.** | |

**<u>MEMORANDUM OPINION</u>**

**Rufe, J.**                                                                                                      **July 9, 2026**

Petitioner Alvaro Leiva-Tut is one of countless noncitizens who have been detained without a bond hearing under Respondents' revised interpretation of Section 235 of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1225. Leiva-Tut promptly filed a 28 U.S.C. § 2241 petition, arguing that his detention without a bond hearing violates the INA, the Administrative Procedures Act ("APA"), and his due process rights.[1]

Because of Leiva-Tut's established presence in the United States, he is not an "applicant for admission."[2] Respondents thus lacked authority to mandatorily detain him under § 1225(b)(2)(A). Consistent with hundreds of other rulings in this District,[3] Leiva-Tut's petition will be granted.

---

[1] Pet. [Doc. No. 1].

[2] 8 U.S.C. § 1225(b)(2)(A).

[3] *See, e.g.*, *Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025) (noting that, as of November 18, 2025, 282 of 288 district court decisions had found that the application of § 1225(b)(2) to noncitizens residing in the United States is unlawful); *Cantu-Cortes v. O'Neill*, No. 25-6338, 2025 WL 3171639 (E.D. Pa. Nov. 13, 2025)*; Kashranov v. Jamison*, No. 25-5555, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025)*; Ndiaye v. Jamison*, No. 25-6007, 2025 WL 3229307 (E.D. Pa. Nov. 19, 2025)*; Patel v. McShane*, No. 25-5975, 2025 WL 3241212 (E.D. Pa. Nov. 20, 2025); *Centeno Ibarra v. Warden of the Fed. Det. Ctr. Phila.*, No. 25-6312, 2025 WL 3294726 (E.D. Pa. Nov. 25, 2025)*; Flores Obando v. Bondi*, No. 25-6474, 2025 WL 3452047 (E.D. Pa. Dec. 1, 2025); *Yilmaz v. Warden of the Fed. Det. Ctr. Phila.*, No. 25-6572, 2025 WL 3459484 (E.D. Pa. Dec. 2, 2025); *Conde v. Jamison*, No. 25-6551, 2025 WL 3499256 (E.D. Pa. Dec. 5, 2025); *Bhatia v. O'Neill*, No. 25-6809, 2025 WL 3530075 (E.D. Pa. Dec. 9, 2025); *Anirudh v. McShane*, No. 25-6458, 2025 WL 3527528 (E.D. Pa. Dec. 9, 2025); *Picon v. O'Neill*, No. 25-6731, 2025 WL 3634212 (E.D. Pa. Dec. 15, 2025). Since then, numerous additional

## I.    BACKGROUND

Leiva-Tut is a thirty-five-year-old native of Guatemala.[4] He entered the United States without inspection approximately three-and-a-half years ago, eventually settling in Philadelphia.[5] Prior to his detention, Leiva-Tut was living with his brother and working in the field of framing carpentry to support himself, his sister, and his sister's child.[6] On or about July 3, 2026, DHS officials detained Leiva-Tut while he was on his way home from work.[7] He is now held at the Philadelphia Federal Detention Center and has not received a bond hearing.[8] Leiva-Tut's detention results from Respondents' newfound interpretation of 8 U.S.C. § 1225(b)(2)(A), whereby they suggest that individuals who have long been present in the United States without lawful status are "applicant[s] for admission" who are "seeking admission" and subject to detention without a bond hearing.[9]

On July 7, 2026, Leiva-Tut petitioned for a writ of habeas corpus under 28 U.S.C. § 2241.[10] Consistent with its established practice for recent cases involving individuals detained by Respondents under 8 U.S.C. § 1225(b)(2)(A), this Court ordered the government to show

---

decisions have ruled against the government. *See, e.g.*, *Kanaut v. Rose*, No. 25-6869, 2026 WL 36690 (E.D. Pa. Jan. 6, 2026); *Francois v. Noem*, No. 25-7334, 2026 WL 27565 (E.D. Pa. Jan. 5, 2026); *Lara Cordon v. Jamison*, No. 25-6937, 2025 WL 3756948 (E.D. Pa. Dec. 29, 2025); *Kumar v. McShane*, No. 25-6238, 2025 WL 3722005 (E.D. Pa. Dec. 23, 2025); *Alekseev v. Warden, Phila. Fed. Det. Ctr.*, No. 26-0462, 2026 WL 413439, at *1 (E.D. Pa. Feb. 13, 2026) (identifying that all 201 decisions in this District have rejected the government's position). Among this District's most recent decisions are *Ramos Vega v. Jamison*, No. 26-4506, 2026 WL 1963038 (E.D. Pa. July 7, 2026) and *Maldonado Guzman v. Jamison*, No. 26-4502, 2026 WL 1949504 (E.D. Pa. July 6, 2026).

[4] Pet. ¶ 1 [Doc. No. 1]; Pet., Ex. 1 [Doc. No. 1-3].

[5] Pet. ¶¶ 1, 17, 41 [Doc. No. 1].

[6] *Id.* ¶ 17.

[7] *Id.* ¶ 2, 18.

[8] *Id.* ¶¶ 19, 51; Pet., Ex. 1 [Doc. No. 1-3].

[9] *Id.* ¶ 3; *See* Opp'n at 3 [Doc. No. 3]; 8 U.S.C. § 1225(b)(2)(A).

[10] Pet. [Doc. No. 1].

2

cause why Leiva-Tut's petition should not be granted.[11] It also scheduled a show cause hearing.[12] By stipulation of the parties, the Court cancelled the show cause hearing and resolved to decide the case on the papers, as the parties requested.[13]

## II.    LEGAL STANDARD

Federal district courts are authorized to grant a § 2241 motion where the petitioner is detained "in violation of the Constitution or laws or treaties of the United States."[14] It is the petitioner's burden to show that the detention violates the Constitution or federal law.[15]

## III.    DISCUSSION

The decisive issue is whether the mandatory detention provided for in 8 U.S.C. § 1225(b)(2)(A) extends to noncitizens who, despite not being admitted or paroled, have established their presence in the United States.[16] As the parties note, courts in this District have confronted this question repeatedly and exhaustively in the past months.[17] Overwhelmingly, these courts have rejected Respondents' position and found that § 1225(b)(2)(A) does not cover

---

[11] 7/8/26 Order [Doc. No. 4].

[12] *Id.*

[13] 7/8/26 Stipulation and Order [Doc. No. 5].

[14] 28 U.S.C. § 2241(c)(3).

[15] *See Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972).

[16] Respondents do not contest whether this Court has jurisdiction to review Leiva-Tut's petition. In any event, the Court has jurisdiction, as the various INA jurisdiction-stripping statutes, *see, e.g.*, 8 U.S.C. § 1252(g); 8 U.S.C. § 1252(a)(2)(B)(ii); 8 U.S.C. § 1252(b)(9), do not apply. *See Yilmaz*, 2025 WL 3459484, at *2 (concluding that the jurisdiction-stripping statutes are not germane because the petitioner "challenges his detention rather than the initiation of removal proceedings, because [the petitioner] cannot obtain relief for his detention following a final order regarding removal, and because [the petitioner's] detention is not the byproduct of a discretionary determination").

[17] Pet. ¶ 3 [Doc. No. 1]; Opp'n at 2-3 [Doc. No. 3].

noncitizens with an established presence in the interior.[18] Still, "[t]his Court considers each case on an *ad hoc* basis, and its rulings turn on the facts of each case at issue."[19]

8 U.S.C. § 1225(b)(2)(A) provides as follows:

**(2)    Inspection of other aliens**

**(A)    In general**

Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

In urging this Court to diverge from its interpretation of § 1225(b)(2)(A) in prior decisions, Respondents primarily rely upon the Fifth Circuit's decision in *Buenrostro-Mendez v. Bondi*[20] and the Eighth Circuit's decision in *Avila v. Bondi*.[21] They emphasize that, in those cases, the courts held that "seeking admission" was not a separate requirement from the condition that the individual be an "applicant for admission."[22]

The Court need not defer to, and indeed rejects, the reasoning of *Buenrostro-Mendez* and *Avila*. The term "seeking admission," by its plain meaning, connotes present, ongoing action.[23] "Because some affirmative, present action is required, this phrase cannot apply to all noncitizens already residing in the United States."[24] An "applicant for admission" who is "seeking

---

[18] *See supra* n.1.

[19] *Diallo v. Bondi*, No. 25-7421, 2026 WL 36534, at *2 (E.D. Pa. Jan. 6, 2026).

[20] 166 F.4th 494 (5th Cir. 2026).

[21] 170 F.4th 1128 (8th Cir. 2026).

[22] Opp'n at 6-8 [Doc. No. 3].

[23] *See Kashranov*, 2025 WL 3188399, at *6 (" '[S]eeking admission' describes active and ongoing conduct—physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization.").

[24] *Centeno Ibarra*, 2025 WL 3294726, at *5.

admission" must therefore be a noncitizen at a port of entry seeking to cross into the United States.[25] Respondents' reading would render the term "seeking admission" entirely superfluous.[26] Their reading would also contravene past agency practice and the canon of constitutional avoidance.[27] Thus, as Leiva-Tut correctly observes, the detention of noncitizens in situations like his is governed not by § 1225 but by § 1226(a) and corresponding regulations, which entitle noncitizens to a bond hearing before continued detention is permitted.[28]

Congress's amendment of § 1226 in the Laken Riley Act confirms this. There, Congress adopted provisions demanding that a noncitizen be detained without a bond hearing if he enters the country illegally and is convicted or charged with certain kinds of crimes.[29] This amendment would be meaningless if, as Respondents suggest, § 1225 authorized detention without a bond hearing irrespective of such criminal matters. Other provisions of § 1226 that reserve mandatory detention for when a noncitizen participates in criminal activity would likewise be superfluous on Respondents' reading. These considerations only amplify following decisions in the Second, Sixth, Tenth, and Eleventh Circuits adopting the interpretation that Leiva-Tut advances.[30]

---

[25] *See Yilmaz*, 2025 WL 3459484, at *3; *Centeno Ibarra*, 2025 WL 3294726, at *5.

[26] *See Ndiaye*, 2025 WL 3229307, at *5 (determining that since Congress's " 'choice of words is presumed to be deliberate and deserving of judicial respect,' this Court must give meaning to the words 'an alien seeking admission.' " (quoting *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 364 (2018)).

[27] *See id.* at *6 (noting that, since 1997, the DHS had applied § 1226(a) to inadmissible noncitizens residing in the United States); *id.* at *7 (an interpretation of § 1225 allowing for the mandatory detention of noncitizens who have long been present in the country would implicate constitutional questions of due process).

[28] *See Yilmaz*, 2025 WL 3459484, at *3; *see also Centeno Ibarra*, 2025 WL 3294726, at *4-7; 8 C.F.R. § 1236.1(c)(8), (d)(1) (stating that bond is available to noncitizens detained under § 1226(a) and that "the immigration judge is authorized to exercise the authority . . . to detain the [noncitizen] in custody, release the [noncitizen], and determine the amount of bond"); *Jorge-Peralta v. Jamison*, No. 26-1775, 2026 WL 1047057, at *4 (E.D. Pa. Apr. 17, 2026) ("[Petitioner's] detention is instead governed by § 1226 because he is a '[noncitizen] already present in the United States.' " (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018)).

[29] Laken Riley Act, Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025); 8 U.S.C. § 1226(c)(1)(E) (requiring mandatory detention of inadmissible noncitizens who have been charged with or convicted of certain crimes including burglary, theft, and larceny).

[30] *See Barbosa da Cunha v. Freden*, 175 F.4th 61, 96 (2d Cir. 2026) (declining to apply § 1225(b)(2)(A) to a noncitizen-detainee who "is not 'seeking admission' because he is not requesting lawful entry into the United States

The Court also disagrees that the government's interpretation should prevail on account of the Supreme Court decisions in *Blanche v. Lau*[31] and *Mullin v. Al Otro Lado*.[32] Neither case involved analysis of § 1225(b)(2)(A)'s distinction between an "applicant for admission" and one who is "seeking admission." In *Lau*, the latter term was only relevant to the extent that the Court held that a lawful permanent resident was properly deemed to be "seeking admission" on reentry since he "committed an offense identified in [8 U.S.C. § 1182(a)(2)]."[33] And, in *Al Otro Lado*, the Court considered "whether an alien who seeks to enter the United States from Mexico 'arrives in the United States' when he or she is still *in* Mexico."[34] Respondents cite these cases for support because of a few occasions in each where the Court alternated between writing "seeking admission" (or "seek admission") and "applicant for admission."[35] But the cases say nothing about how those terms interact in a reading of § 1225(b)(2)(A). *Lau* and *Al Otro Lado* are therefore inapposite here. This Court still aligns its reasoning with the numerous decisions in this district—and the majority in neighboring circuits—that interpreted § 1225(b)(2)(A) and concluded it does not cover noncitizens like Leiva-Tut who are established within the interior.

---

after inspection and authorization"); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258, 1285 (11th Cir. 2026) (reaching the same result and noting, "Congress has . . . preserved the longstanding border-interior distinction for purposes of detention, a position it has taken for over a hundred years"); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Cir. 2026) ("Because no Petitioner is alleged to be seeking admission or lawful entry into the United States . . . Petitioners could have been detained pursuant to only § 1226."); *Santillan Quiroz v. Mullin*, No. 26-6019, 2026 WL 1876709, at *8 (10th Cir. June 30, 2026) ("Based on the statutory text and context, we conclude that § 1225(b)(2)(A)'s application is limited to the border.").

[31] 2026 WL 1791339 (U.S. June 23, 2026).

[32] 2026 WL 1825741 (U.S. June 25, 2026).

[33] *Lau*, 2026 WL 1791339, at *4-5 (quoting § 1101(a)(13)(C)(v)).

[34] *Al Otro Lado*, 2026 WL 1825741, at *3 (footnotes omitted).

[35] Opp'n at 8-9 [Doc. No. 3]. Further, although *Al Otro Lado* minimized the weight of the anti-surplusage canon in one specific context, this Court does not read it to mean that the Supreme Court "rejected reliance on the anti-surplusage canon to draw distinctions in the INA," as Respondents suggest. *Id.* at 3; *see Al Otro Lado*, 2026 WL 1825741, at *9 ("[I]f forced to *choose between* an interpretation that entails some redundancy and one that contradicts what words usually mean, we would choose the former." (emphasis added)); *see also Ramos Vega v. Jamison*, No. 26-4509, 2026 WL 1906667, at *3.

To summarize, Leiva-Tut may be detained under the INA only if, under § 1226(a) and applicable regulations, he receives a bond hearing and the facts show that he poses a risk of flight or community endangerment.[36] Respondents do not allege facts suggesting that Leiva-Tut poses either concern. To the contrary, Leiva-Tut has been in the United States for approximately three-and-a-half years, has developed ties to his community through his work and family, and nothing in the record suggests he has a criminal background—either in the United States or Guatemala.[37] As the government does not offer any justification for Leiva-Tut's detention apart from § 1225(b)(2)(A), his present detention is unlawful, and the Court will order his immediate release.[38]

Because Leiva-Tut's detention without a bond hearing violates the INA, the Court need not reach his APA and due process arguments.

## IV.    CONCLUSION

For the foregoing reasons, Respondents were not authorized to mandatorily detain Leiva-Tut without a bond hearing under 8 U.S.C. § 1225(b)(2)(A). The Court will grant his petition and order his immediate release, subject to the possibility of later arrest consistent with § 1226(a) and the terms of the order that follows.

---

[36] *See Yilmaz*, 2025 WL 3459484, at *3; *Centeno Ibarra*, 2025 WL 3294726, at *4, *8 n.69; 8 C.F.R. § 1236.1(c)(8), (d)(1).

[37] Pet. ¶ 17 [Doc. No. 1].

[38] *See Karshranov*, 2025 WL 3188399, at *8 ("[A] habeas court has 'the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted.'" (quoting *Boumediene v. Bush*, 553 U.S. 723, 779 (2008)).